# EXHIBIT 4
# TO DIKSHIT DECL.

**Provider**
Limited

Statsion, 11, Elvaston Place, South Kensington, London, SW7 5QG, UK
M: +44 7710 325450 Tel: +44 20 7589 4969 Fax: 020 7504 8220 E-mail: jacob.varnam@virgin.net

4th August 2004

**Mr Clapha Gbollie**
President
LIMINCO
4th Street
Sinkor,
P.O. Box 10-3727
Monrovia
REPUBLIC OF LIBERIA
West Africa

Dear Mr Gbollie

**LIMINCO Project**

We have the honour to present our compliments.

Since our last visit to Liberia in May 2004 the international consultants RSG Global together with the GIHL/Ispat personnel have visited the LAMCO archive in Sweden and collated their data thus completing the initial scoping study.

In order to commit further resources and progress the project to an operational stage we now wish to enter a Joint Venture agreement ("JV") with the Government as referred to in clause 1.1.1 of the MOU of 28th November 2003. With this in mind we submit the attached proposal to act as the basis for discussions and to provide a structure with a view to concluding the Joint Venture agreement.

I trust that the above is in order and look forward to working with you on moving this project into production.

Yours Sincerely

Jacob Varnam
Director

Cc:   Mr Ramanand Singh – Director, Mining and RM Exploration, ISPAT

Registered Office: 42 Cumberland Park, London, W3 6SX. Registered in England No. 3281370

# **Proposed JOINT VENTURE AGREEMENT**

This Joint Venture Agreement, hereinafter referred to as the "JV", is entered into by and between

The Government of Liberia, hereinafter referred to as "GOL", of the address Capitol Hill, PO Box 9024, Monrovia, Republic of Liberia hereby represented by the Honorable Jonathan A.Mason, Minister of Lands Mines and Energy;

Liberian Mining Corporation, hereinafter referred to as "LIMINCO", of the address 4th Street, Tubman Boulevard, Sinkor, Monrovia, Republic of Liberia Box 10-3727 hereby represented by Mr Ciapha Gbollie, President of LIMINCO;

AND

Global Infrastructure Holdings Limited, hereinafter referred to as "GIHL", the holding company of ISPAT GROUP with registered office at 1st Floor Murdoch House, North Shore Road, Ramsay, Isle of Man, IM8 3DY hereby represented by Mr Rakesh Dikshit;

The above entities referred to jointly as the "Parties" (singularly "Party")

**Whereas:**

1. GOL is the organ of the Sovereign State of Liberia charged to represent the State and is empowered to enter into agreements with international companies and entities to bring investment, operations, expertise and technical know-how to Liberia;

2. The Minister of Finance and Minister of Lands Mines and Energy are empowered by GOL to enter into agreements with international companies and entities to bring investment, operations, expertise and technical know-how to the mining and associated sectors in Liberia;

3. LIMINCO is a Parastatal being a business owned and controlled by GOL;

4. LIMINCO was established and is responsible for GOL's interests in Iron Ore mining in the Nimba Range and Western Area, Liberia;

5. LIMINCO is empowered by GOL to enter into agreements with international companies and entities to bring investment, operations, expertise and technical know-how to the developments of the Nimba Range and Western Area ores;

6. GOL, LIMINCO, GIHL and Provider Limited have entered into a Memorandum of Understanding hereinafter referred to as the "MOU", dated 28th November 2003 with the objectives of entering into a Joint Venture in relation to the development of Iron Ore deposits in the Nimba Range and the operations thereof together with the associated infrastructure;

7. LIMINCO controls the Mineral Development Agreements hereinafter referred to as "MDA" in relation to Iron Ore deposits and mines in the Nimba Range and Western Area in Liberia;

8. LIMINCO is the owner and operator of, the Port Of Buchanan hereinafter referred to as the "Port", the Railway from the Port of Buchanan to the Mine site at Mount Nimba near the international border between Liberia and Guinea hereinafter referred to as the "Railway", "Power Plants", "Roads" and other associated utilities and infrastructure;

**And whereas**

1. GIHL is a major international group having specialty in operation and management of Iron and Steel business and integrated plants worldwide;

2. Mr Rakesh Dikshit is empowered by GIHL to seek business opportunities and is authorised to enter into agreements on their behalf;

3. GIHL have complied with the terms of the MOU in relation to the carrying out the initial stage of the feasibility study in respect to the development of the Nimba Range and Western Area Iron ore deposits.

Now therefore in respect of the mutual covenant and promises the Parties have agreed the following:

**Clause 1**
**Objectives and Purpose of this Joint Venture Agreement**

1.1.1  Explore, Extract, Process and Market Iron Ore and products under MDA(s) in the Nimba Range, and Western Area Deposits, Liberia and other areas as may be required to assist the Joint Venture operations;

1.1.2  Rehabilitate and operate the Port, the Railway and the Power Plants;

1.1.3  Charge and collect revenues from the operation of the Port and Railway, power plants etc.;

1.1.4  Finance the Mining, Railway and Port rehabilitation and operations utilising international finance and the revenue streams arising from those operations;

1.1.5  To train and employ Liberians at all levels.

**Clause 2**
**Obligations of GOL**

2.1  To procure Mining Rights for the Contract Area;

2.2  The Contract Area (See APPENDIX 2) to include:

   2.2.1  Nimba Range, including:
      Main Ore Body
      Mount Gbahm
      Junction Ridge

   2.2.2  Western Area Deposits, including:
      Tokadeh
      Yuelliton
      Gangra
      Beeton

   2.2.3  All other areas controlled by LIMINCO;

   2.2.4  Associated Quarries.

   2.2.5  Other areas as may be required to assist the operations of the JV

2.3 To inject all the assets of the LIMINCO company into the Joint Venture, including but not limited to:

    2.3.1 Mines;

    2.3.2 The Railroad including:
- The main railway
- All sidings and loops
- Sheds, buildings, maintenance yards and facilities
- All remaining rolling stock
- Other remaining rail infrastructure and equipment

    2.3.3 The Port of Buchanan including:
- The Ore Quay
- The Commercial Quay
- All associated buildings and infrastructure

    2.3.4 The LIMINCO Communities including but not limited to:
- Yekepa
- Buchanan

    2.3.5 The damaged power plants and associated infrastructure;

    2.3.6 Any other associated infrastructure.

2.4 Obtain all Approvals, Licences and Permits as required to operate the Joint Venture;

2.5 To provide incentives in the form of exemption from all taxes including the following during construction and up to the end of the fifth year of full production after which they will be reviewed:

    2.5.1 Taxes;

    2.5.2 Royalties;

    2.5.3 Duties;

    2.5.4 Inspection Charges;

    2.5.5 Any other taxes, levies or duties imposed from time to time.

2.6 To assist in providing a stable investment environment by:

    2.6.1 continuing to assist UNMIL in its efforts on the DDRR program;

    2.6.2 the conducting of free and fair democratic elections;

    2.6.3 improving other vital security services.

2.7 To assist in promoting the project and investment through interaction with leading international institutions and agencies including Nepad, Ecowas, Mano River Union, United Nations, World Bank, IFC and any other entities that can assist in the smooth operation of the joint venture;

2.8 To assist and exclusively work with the other Parties to achieve the Objectives of this Agreement as set out in clause 1 above;

2.9  To provide necessary assistance including information, data, introductions, ongoing support, and a secure positive environment in which to achieve the objectives as referred to in clause 1 above;

2.10  Guarantee the Parties and their consultants the necessary assistance in obtaining, authorizations, visas and general freedom of movement to facilitate the execution of its obligations;

2.11  To assist, support and encourage the JV nationally and internationally in its quest to generate alternative business and revenue opportunities.

**Clause 3**
**Obligations of GIHL**

3.1  To carry out a Feasibility Report as prescribed under an MDA;

3.2  To produce a Production Work Program as required under an MDA and use it together with the Feasibility Report as the basis for ongoing Operations (See Appendix 1);

3.3  To carry out an Environmental Impact Assessment hereinafter referred to as "EIA" in relation to the Operations as required by the Environmental Protection and Management Law;

3.4  To procure Capital Investment and Financing for Operations and manage finances on a daily basis;

3.5  To bring international expertise, systems and technical know-how to the JV and the associated operations and infrastructure;

3.6  To Manage the Operations;

3.7  To utilise a well defined management structure, international standards of accounting and governance, and provide regular comprehensive reporting to the Parties;

3.7  To Market all Production;

3.8  To bring international expertise in Iron Ore Mining and processing to Liberia and provide Employment, Secondment and Training as required under the MDA;

3.9  To establish Healthcare and Education facilities as required under the MDA;

3.10  To consider legal and operational obligations for the JV as require by the Liberian Minerals and Mining Law including environmental issues, employment and training of the domestic labour force, the domestic requirement for Iron Ore and the rehabilitation of the mine site after exhaustion;

3.11  To establish an administrative locus in Liberia that will provide reporting and accounting services to the Operations and will collaborate with the Parties to ensure smooth running of those operations.

**Clause 4**
**Environmental:**

4.1  GOL will provide an indemnity to the Joint Venture in relation to any historical environmental issue as identified in the EIA.

**Clause 5**
**Commercial**

5.1 GOL will provide an indemnity to the Joint Venture in relation to any historical commercial liability attributing to any assets or rights, injected into the JV as referred to in Clause 2 the "Obligations of GOL".

**Clause 6**
**Incentives**

6.1 Due to the marginal nature and the substantial investment outlay of the project the GOL will provide necessary and sufficient incentives as available under the Investment Incentive Code of the Republic of Liberia.

**Clause 7**
**Production Work Program**

7.1 See APPENDIX 1

**Clause 8**
**Shareholding**

8.1 Due to the high risk nature of the project, as identified by the RSG Global scoping study together with the associated size of investment required, the proposed shareholding is as follows:

8.1.1 GOL    25%

8.1.2 GIHL   75%

8.2 In the event that GOL wishes to divest itself of any shareholding, subject to any rights under the Minerals and Mining Law, it will give rights of pre-emption to GIHL prior to agreeing a sale to any external third party.

**Clause 9**
**Arbitration**

9.1 As provided under the Minerals and Mining Law.

**Clause 10**
**Force Majeure**

10.1 As provided under the Mineral and Mining Law.