# EXHIBIT A
# DIKSHIT DECL.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LIBERIA GLOBAL MINING COMPANY, ) <br> ) <br> AND ) <br> ) <br> GLOBAL STEEL HOLDINGS, LTD., ) <br> ) <br> ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> GOVERNMENT OF REPUBLIC OF ) <br> LIBERIA ) <br> ) <br> Defendant. ) <br> ) | JUDGE: <br><br> CASE NO: |

### DECLARATION OF RAKESH DIKSHIT

I, Rakesh Dikshit, depose and state as follows:

1. I am a Manager of Business Development for Plaintiff Global Steel Holdings, Ltd. ("Global Steel") and one of the directors of Plaintiff Liberia Global Mining Company. I make this Declaration in Support of the Application of Plaintiffs Liberia Global Mining Company and Global Steel Holdings Limited for Preliminary Injunction. I have personal knowledge of the facts set forth below, and, if called upon to testify, could and would competently testify to each of them.

2. Exhibit 1 to this Declaration is a true and correct copy of the March 4, 2005 Certificate of Change of Name pursuant to which Global Infrastructure Holdings, Ltd. changed its name to Global Steel Holdings, Ltd. for marketing and branding purposes.

3. Exhibit 2 to this Declaration is a true and correct copy of the Mineral Development Agreement among Global Steel Holdings, Ltd. (formerly Global Infrastructure Holdings, Ltd.), Liberia Global Mining Company, and the Government of Liberia.

4. Exhibit 3 to this Declaration is a true and correct copy of the signed Memorandum of Understanding, dated November 28, 2003.

5. Exhibit 4 to this Declaration is a true and correct copy of an August 4, 2004 letter from Mr. Varnam on behalf of Global Steel Holdings, Ltd. to Mr. Gbollie of LIMINCO regarding Global Steel's notice to the Government of Liberia that it wished to proceed with the joint venture agreement.

6. Exhibit 5 to this Declaration is a true and correct copy of an August 30, 2004 letter from Mr. Jonathan Mason, Minister of Land, Mines and Energy of the Government of Liberia to Mr. Varnam informing Global Steel that the LIMINCO Board of Directors had authorized the Mineral Technical Committee to negotiate a Mineral Development Agreement with Global Steel.

7. Exhibit 6 to this Declaration is a true and correct copy of an October 4, 2004 Letter from the Mineral Technical Committee to the LIMINCO Board of Directors informing them that the Government of Liberia and Global Steel Holdings, Ltd. had completed negotiations and successfully concluded their agreement.

8. Exhibit 7 to this Declaration is a true and correct copy of the Articles of Incorporation of Liberia Global Mining Company.

9. Exhibit 8 to this Declaration is a true and correct copy of an October 14, 2004 letter from the Government of Liberia to Global Steel affirming the agreement between the parties and authorizing Global Steel to proceed with the performance of its obligations under the Mineral Development Agreement.

10. Exhibit 9 to this Declaration is a true and correct copy of a December 15, 2004 letter from the Government of Liberia to Global Steel reaffirming the agreement between the parties and again granting permission to Global Steel to proceed with the performance of its obligations under the Mineral Development Agreement.

11. Exhibit 10 to this Declaration is a true and correct copy of an advertisement dated June 9, 2005 placed by Global Steel's competitor that ran in The Inquirer, a major Liberian newspaper, on June 13, 2005.

12. Exhibit 11 to this Declaration is a true and correct copy of a June 13, 2005 article entitled "Bryant, Mittal Steel Flout Law" from The Analyst which appeared in allAfrica.com.

13. Exhibit 12 to this Declaration is a true and correct copy of an April 7, 2005 article entitled "Crisis Unfolding in LIMINCO Concession" which appeared in www.analystnewspaper.com.

14. The mines and mineral deposits that are the subject of the MDA have not been exploited for many years. The iron ore resources in Nimba county and the associated

infrastructure in Yekepa and Tokadeh in Nimba County and through up to and at Buchanan in Grand Bassa county lie in an area encompassed by a previous concession granted in the 1950s to the Liberian-American-Swedish Mining Company ("LAMCO"). That concession was abandoned in the 1980s and reverted to Liberia, who holds it through a parastatal enterprise known as LIMINCO. The area is, however, still known as "the LAMCO Concession area," but no mining activity has occurred there since the LAMCO concession was active.

15. The MDA was the product of extensive negotiations among the parties, and I believe that all parties intended to be bound by the agreement after its terms were finalized in early October 2004. Indeed, after the MDA was finalized and concluded on October 4, 2004, Global Steel Holdings immediately began performing its obligations pursuant to it. For example, we deployed in-house experts to Monrovia, including mining, geology, railway, port and material handling managers. We also hired, through contractors, approximately 150 workers in the area so as to provide security against vandalizing of the assets in the area of the mine and to begin dealing with infrastructure issues such as assessment of existing conditions, clearing of the mine area and along the railway line, evaluation of the condition of the railway network, port and material handling equipment as well as clearing in the areas around the dwellings units of the communities. In addition, resource planning (both human and material) began in Monrovia and elsewhere. Considerable resources were spent in these activities and towards interactions with the specialists in the industry, mining engineers and the geologists. Global Steel has already incurred over $465,000 in expenditures in reliance on the MDA.

16. The Government of Liberia also immediately began performing its obligations under the MDA. For example, on October 5, 2004, the Government of Liberia through the Minister of Justice and Attorney General executed the LGMC Articles of

Incorporation. On October 7, 2004, they filed the Articles of Incorporation with the Minister of Foreign Affairs. In addition, the Government of Liberia assisted Global Steel representatives in obtaining access to the concession area for on-site visits and planning work. The Government of Liberia also allowed Global Steel representatives to travel to Liberia for the project. In addition, the Government of Liberia also permitted Global Steel to engage local workers to provide security of the sites.

17. The Government of Liberia has now done a variety of things that have made clear that it intends to award the Global Steel's mining concession to one of our principal competitors. On March 29, 2005, the Mineral Technical Committee met to consider proposals from bidders in the re-opened bidding process that had begun the previous fall and which we had been repeatedly assured was only a formality that would not affect our agreement. We were told that at this meeting, Global Steel's proposal again received the highest score from the Committee, and the Committee again confirmed its intention to proceed with the MDA.

18. But when the public announcement came — a week later than expected, on April 6, 2005, the Ministry of Lands, Mines and Energy informed Chairman Bryant, the head of Liberia's National Transitional Government, that the U.S.-supported competitor of Global Steel, instead of Global Steel, was the company selected to receive the concession. That competitor was one of the previous bidders for the concession whose bid had been unsuccessful, but whose bid was supported by the U.S. Ambassador to Liberia. Based on reliable information I have received here in Liberia, I understand that Global Steel obtained a combined score of more than 200 points higher than this competitor in the competitive bidding process and that these scores were arbitrarily reversed due to high-level political pressure.

19. The competitor has made recent public statements that it is the holder of the mining concession. It is my belief that absent an Order from this Court, an MDA will soon be concluded between the Government of Liberia and Global Steel's competitor. The Government of Liberia will then issue a Class A Mining License to Global Steel's competitor. I believe that an order from a court in the United States will be respected by the authorities in Liberia but that without one, Global Steel's competitor may begin occupying the mine area and using the governmental infrastructure that is necessary to support this project, including railway lines and port facilities. The Government of Liberia will then exclude others from these areas using force if necessary.

20. Once Global Steel's competitor physically moves into the mining area and related infrastructure, it is my firm belief that it will be impossible for Global Steel to recapture its rights under the MDA. If this should happen, the damage to Global Steel's business and reputation will be substantial and irreversible, particularly given the uniqueness of the rights and interests at issue.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on July 1, 2005 in Monrovia, Liberia.

_____
RAKESH DIKSHIT