## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LIBERIA GLOBAL MINING COMPANY, GLOBAL STEEL HOLDINGS, LTD., )<br><br>Plaintiffs, )<br><br>v. )<br><br>GOVERNMENT OF REPUBLIC OF LIBERIA, )<br>Ministry of Foreign Affairs )<br>Monrovia, Liberia )<br><br>Defendant. ) | Case No. 1:05CV01337 GK<br><br>ORAL HEARING REQUESTED |

### DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Pursuant to Federal Rules of Procedure 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6), Defendant Republic of Liberia respectfully moves the court for an order dismissing the Complaint of Plaintiffs Liberia Global Mining Co. and Global Steel Holdings, Ltd, on the following grounds:

(i)    lack of jurisdiction over the subject matter under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330(a), 1604, 1605(a);

(ii)    lack of jurisdiction over the person due to insufficient service of process under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330(b), 1608(a);

(iii)    insufficient service of process under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330(b), 1608(a); and

(iv)    failure to state a claim upon which relief can be granted.

The grounds for this Motion are set forth in the accompanying Statement of Points and Authorities.  A Proposed Order is attached.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: Judith A. Miller (Bar No. 941542)
725 12th St. NW
Washington, D.C.  20006
(202)-434-5247
Fax: (202)-434-5029
*Counsel for Defendant Republic of*
*Liberia*

Dated:  July 29, 2005

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LIBERIA GLOBAL MINING COMPANY, ) | |
| GLOBAL STEEL HOLDINGS, LTD., ) | |
| ) | |
| Plaintiffs, ) | Case No. 1:05CV01337 GK |
| ) | |
| v. ) | |
| ) | ORAL HEARING REQUESTED |
| GOVERNMENT OF REPUBLIC OF ) | |
| LIBERIA, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF THE**
**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT AND IN**
**OPPOSITION TO THE PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

This Memorandum is filed in support of defendant Republic of Liberia's motion to dismiss the Complaint and in opposition to the plaintiffs' application for an injunction. This Court has neither personal nor subject matter jurisdiction over the Republic. The Complaint must accordingly be dismissed. Lacking jurisdiction, this Court has no power to grant the application for preliminary injunctive relief.

**BACKGROUND**

This case arises from a dispute among plaintiffs Global Steel Holdings, Ltd., a company incorporated in the Isle of Man that operates out of Dubai, and Liberian Global Mining Co., a Liberian company (hereinafter together referred to as "Global"), and the Defendant Republic of Liberia. *See Complaint* at ¶¶ 1-3. Global claims that it entered into a Mineral Development Joint Venture Agreement ("MDJVA") with the Republic of Liberia entitling it to extract iron ore from the Nimba and Grand Bassa counties of Liberia (the "Concession Area"). *Id.* at 4

- 1 -

(introduction). However, the facially incomplete agreement has no signature page and was never signed by either party, ratified by Liberia's National Transitional Legislative Assembly, or approved by the Chairman of the National Transitional Government of Liberia. *Cf. id.* at ¶ 10 (noting that the parties had not engaged in "the formality of signing the document"). The document expressly states that it will not come into effect until these events have transpired. *See* Ex. 1 to *Complaint*, at art. II [hereinafter, "Draft MDJVA"]. At most, the MDJVA at issue in this case is simply an unexecuted and partial draft.

After negotiating the terms of the Draft MDJVA with Global, the Republic of Liberia exercised its sovereign prerogative to initiate a new competition for the right to extract the nation's natural resources. *Complaint* at ¶ 22. The plaintiffs participated in that competition, but were unsuccessful. *Id.* ¶ 27. The plaintiffs subsequently attempted to challenge that result, in multiple fora, through both arbitration and litigation. They purported to invoke the Draft MDJVA's arbitration clause by filing a "Request for Arbitration" with the International Centre for Settlement of Investment Disputes ("ICSID"), despite the fact that the Draft MDJVA, by its express terms, never went into effect. *Id.*

The plaintiffs have also sought relief in this matter from Liberian courts. *Id.* ¶ 26 (alleging that "orders of Liberian Courts" already have been issued in this matter). Global's claims, and the Republic's defenses, are now before the Supreme Court of Liberia, which is expected to render a decision in the next few weeks. In the meantime, Liberian court orders entered on April 14 and 15, 2005, preclude the Republic from awarding the concession to any other entities. In other words, the plaintiffs have already obtained in Liberia the relief they are seeking here.

Dissatisfied with both the Liberian courts and the ICSID, the plaintiffs now seek to initiate a third set of proceedings concerning this matter—this time, in a United States federal district court. Although the plaintiffs contend that this dispute must be adjudicated before a panel of ISCID arbitrators, *see id.* ¶¶ 30-31, and despite the stay orders they already obtained in Liberia, they are asking this Court for an injunction to "preserve the status quo" until the ICSID can convene an arbitration panel, which can thereafter decide for itself whether to grant further interim relief. *Id.* ¶ 32.

The injunction the plaintiffs have requested would have this Court prohibit the Republic of Liberia from negotiating with any other companies to extract ore from the Concession Area. It would also bar the Republic from permitting any entities to take any steps toward extracting resources from that area or developing the supporting infrastructure necessary for such operations. *See Plaintiffs' Proposed Order* at 3.

The plaintiffs attempted to serve process for this suit upon the Republic of Liberia by having copies of the Complaint and Summons hand-delivered to the Minister of Lands, Mines and Energy; the Minister of Finance; and the Chairman of the National Investment Commission. *See Return of Service to the Government of Liberia.*

## SUMMARY OF ARGUMENT

This suit suffers from multiple fundamental flaws that require this Court to reject the plaintiffs' motion for a preliminary injunction and dismiss the Complaint. Most fundamentally, this Court lacks personal jurisdiction over the Republic because the Summons and Complaint were not served upon it in accordance with 28 U.S.C. § 1608(a), the Foreign Sovereign Immunities Act. *See* 28 U.S.C. § 1330(b). The plaintiffs contend they served the Republic in accordance with the terms of the Draft MDJVA, a "special arrangement" under § 1608(a)(1).

The plaintiffs may not rely upon the Draft MDJVA, however, because by its express terms it never entered into effect. Moreover, the Draft MDJVA does not even purport to establish procedures for serving process upon the Republic. Consequently, service was impermissible under § 1608(a)(1). Because the plaintiffs' service did not fulfill the requirements of any of the the Foreign Sovereign Immunities Act's ("FSIA") other service-related provisions, this case must be dismissed under Federal Rules of Civil Procedure 12(b)(2) (lack of personal jurisdiction) and 12(b)(5) (inadequate service of process).

A second crucial problem with the plaintiffs' case and request for preliminary injunction is that this Court lacks subject-matter jurisdiction. The FSIA states that a federal court may exercise subject-matter jurisdiction over suits against foreign sovereigns only under the circumstances specified in 28 U.S.C. § 1605(a)(1) through (a)(7). This case does not fall within either of the subsections the plaintiffs seek to invoke. The Republic neither explicitly nor implicitly waived its sovereign immunity under § 1605(a)(1) through the Draft MDJVA. Nor does this case fall within the arbitration exception to sovereign immunity under § 1605(a)(6) because, far from asking this court to enforce an arbitration agreement, the plaintiffs are instead seeking an order that would violate the rules of the arbitral forum the Draft MDJVA would establish as binding. Consequently, this case must be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

Moreover, because subject matter jurisdiction is an essential element of personal jurisdiction under the FSIA, the plaintiffs' failure to fulfill § 1605(a)'s requirements for subject matter jurisdiction constitutes another reason why this court may not exercise personal jurisdiction over the Republic. This is a separate basis upon which this Court must dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(2).

A third major deficiency with the plaintiffs' suit and request for a preliminary injunction is that the rules of the forum before which the plaintiffs claim they agreed to proceed preclude them from seeking interim or provisional relief from national courts. The arbitration clause of the Draft MDJVA, under which the plaintiffs are purporting to bring the underlying arbitration, stipulates that the proceedings are to be governed by the rules of the International Centre for Settlement of Investment Disputes ("ICSID"). ICSID Arbitration Rule 39(5) states that participants in an arbitration may seek provisional relief from national courts only if the underlying arbitration clause expressly permits them to do so. Because the Draft MDJVA does not contain such a stipulation, the rules of the very forum the plaintiffs have invoked bar their claim before this court.

Finally, the plaintiffs have wholly failed to demonstrate their entitlement to injunctive relief. The plaintiffs cannot demonstrate a likelihood of success on the merits because the Draft MDJVA—the agreement under which they are invoking the arbitration panel's jurisdiction—was never signed, ratified, or approved by either party, so never entered into effect. The plaintiffs are further unable to show irreparable injury because, in their arbitration demand, they recognized the potential availability of a legal remedy by estimating the amount of damages they will suffer, thereby admitting that monetary relief can make them whole. Finally, there are strong public policy factors that weigh against an award of equitable relief due to this country's strong policy of abstaining from interfering in the affairs of foreign sovereigns.

## ARGUMENT

## I.    THE COMPLAINT SHOULD BE DISMISSED DUE TO INSUFFICIENT SERVICE OF PROCESS.

28 U.S.C. §§ 1608 sets forth rules for serving a foreign state with process. It establishes a hierarchy of methods of service, "such that a plaintiff must attempt to follow the methods of

service in the order that they are laid out in the statute." *Magness v. Russian Fed'n*, 247 F.3d

609, 613 (5th Cir. 2001). These methods, in statutory order, are:

    (1)    delivery by "special arrangement for service,"

    (2)    delivery "in accordance with an applicable international convention on service of judicial documents,"

    (3)    delivery "by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned," or

    (4)    delivery by sending the summons and complaint to the Secretary of State in Washington, D.C. to the attention of the Director of Special Consular Services to be transmitted by her.

28 U.S.C.A. § 1608(a). "Strict adherence" to these provisions is necessary. *Transaero, Inc. v.*

*La Fuerza Aerea Boliviana*, 30 F.3d 148, 154, 308 U.S. App. D.C. 86 (D.C. Cir. 1994). Mere

"substantial compliance" with the statute is insufficient. *Magness*, 247 F.3d at 611.

The plaintiffs claim that they served the Republic under § 1608(a)(1). That provision

authorizes a plaintiff to deliver a summons and complaint "in accordance with any special

arrangement for service" it has with the defendant. The plaintiffs contend that the MDJVA

constitutes such a "special arrangement." The biggest obstacle to this argument is that, by its

express terms, the MDJVA never entered into effect, and is, at most, simply an unexecuted draft.

When a contract specifies the conditions upon which it is to become effective, neither

party "ha[s] any duties under the contract" unless and "[u]ntil the condition precedent [i]s

fulfilled." *Gatoil (U.S.A.) v. Washington Metro. Area Transit Auth.*, 801 F.2d 451, 456, 255 U.S.

App. D.C. 237 (D.C. Cir. 1986); *see also Blackman v. Hustler Magazine, Inc.*, 620 F. Supp.

1501, 1513 (D.D.C. 1984) ("Because the condition precedent was not fulfilled, no valid and

binding agreement ever came into existence."), *aff'd in part and rev'd in part on other grounds*,

800 F.2d 1160, 255 U.S. App. D.C. 135 (1986). The Draft MDJVA states:

This Agreement shall become effective and be binding on the Parties thereto when executed by them, ratified by the National Transitional Legislative Assembly and approved by the Chairman of the National Transitional Government of Liberia.

Draft MDJVA art. II.  However, the agreement was never:

- executed by either party,

- ratified by the National Transitional Legislative Assembly, or

- approved by the Chairman of the National Transitional Government of Liberia.

Because the conditions specified in the Draft MDJVA never came to pass, it never entered into effect.

Even if the Draft MDJVA were binding, however, it does not create a special arrangement for service of process.  The Draft MDJVA contains only one provision addressing how the plaintiffs may communicate with the Republic of Liberia, stating:

All orders, approvals, declarations and Notices of any kind between the Parties hereto *which are required, expressly authorized or provided for under this Agreement (hereinafter each referred to as a "Communication")* shall be in writing and delivered by hand, by telefax, by postage registered mail, by any other means of communication agreed upon by the Parties hereto.

Draft MDJVA Art XXXII, § 1 (emphasis added).  The Draft MDJVA goes on to provide,

A delivery of *a Communication* to a Party hereto shall be deemed to have occurred in any of the following circumstances:

When an official of GOVERNMENT . . . has signed a return receipt of registered mail; [or]

When a Party hereto has directly or indirectly acknowledged the receipt of the Communication in writing.

*Id*. Art. XXXII, §§ 2(a), (d) (emphasis added).

These provisions do not establish rules for *all* contacts between the plaintiffs and the Republic of Liberia.  Under the Draft MDJVA, the plaintiffs may take advantage of the specified procedures only to make a "Communication."  The document expressly defines

"Communication" as a Notice of any kind that is "required, expressly authorized or provided for under this Agreement." *Id.* Art. XXXII, § 1. In light of that definition, this Court is bound to interpret the Draft MDJVA's "Communication" provisions restrictively. *See, e.g., Caldwell v. Bechtel, Inc.*, 631 F.2d 989, 995, 203 U.S. App. D.C. 407 (1980) (noting that the definitions of certain terms in a contract took precedence over the "customary meaning" of those terms).

The Summons and Complaint in this case, initiating a lawsuit in a United States district court against the Republic of Liberia for breach of contract and for an injunction in aid of arbitration, are certainly not "required" by the Draft MDJVA, and are not "expressly authorized or provided for" by the agreement, either. The only provision in the Draft MDJVA addressing service of process states,

> The GOVERNMENT hereby irrevocably . . . waives all claims of sovereign immunity from the Arbitrators' jurisdiction, and from the enforcement of any arbitral award rendered by a tribunal constituted pursuant to this Agreement, including immunity from service of process and immunity from the jurisdiction of any court situated in any state, country or nation.

Art. XXXI, §7. By its terms, this provision addresses only service of process from a court pertaining to "the enforcement of any arbitral award rendered by a tribunal constituted pursuant to this Agreement." *Id.* Because neither this provision—nor any other clause in the Draft MDJVA—requires, authorizes, or provides for service of process on the Republic of Liberia in any other type of judicial proceeding, such as this case, the Complaint and Summons at issue here are not "Communications." Thus, the Draft MDJVA does not establish special procedures for serving the Republic of Liberia.

*Underwood v. United Rep. of Tanz.*, No. 94-902, 1995 U.S. Dist. LEXIS 1333 (D.D.C. Jan. 27, 1995), reaches the same result. In that case, the Government of Tanzania entered into a contract to buy real property in Washington D.C. The contract stated that any "notices 'required

or permitted herein'" could be mailed to the Government of Tanzania. *Id.* at *6. Noting that the complaint and summons in that case were neither required nor expressly permitted by the lease, the court concluded that the lease did not "create a 'special arrangement' for service in a lawsuit." *Id.*; *see also Berdakin v. Consulado de La Republica de El Salvador*, 912 F. Supp. 458, 466 (C.D. Cal. 1995) (holding that, where a lease with a foreign government established procedures for communicating "demands, notices, and declarations *provided for by the lease*," and did not "mention service of process," it did not "constitute a special arrangement for service of process" under § 1608(a)(1)).

In contrast, the court in *Marlowe v. Argentine Naval Comm'n*, 604 F. Supp. 703, 704 (D.D.C. 1985), was faced with a contract that stated, "All notices, requests, demands, or other communications to or upon the respective parties hereto shall be deemed to have [been] given or made when deposited in the mail." Unlike the clauses in *Underwood* and *Berdakin*, the provision in *Marlowe* permitted *all* communications between the parties to be mailed to each other—not just those expressly provided for in the agreement. Because "[s]ervice of process certainly [fell within] the contractual language" at issue, the *Marlowe* court concluded that the parties had a binding special arrangement under § 1608(a)(1). *Id.*; *accord Int'l Road Fed'n v. Embassy of the Dem. Rep. of the Congo*, 131 F. Supp. 2d 248, 251 (D.D.C. 2001) (holding that a lease provision permitting a landlord to mail "*all* notices, demands, or requests" to a foreign government was a "special arrangement" under § 1608(a)(1)) (emphasis added).

Unlike the agreements in *Marlowe* and *International Road Federation*, the Draft MDJVA does not permit "all" notices to be mailed to the Republic of Liberia, but only ones that are required, expressly authorized, or provided for elsewhere in the agreement. In contrast to the documents in those cases, it also makes no provision for delivery of "demands" or "requests."

- 9 -

Instead, it is indistinguishable from the provisions in *Underwood*, 1995 U.S. Dist. LEXIS 1333, and *Berdakin,* 912 F. Supp. at 466, that were held to be insufficient under § 1608(a)(1) to give rise to a special arrangement. Consequently, the plaintiffs' service of process is not permitted under § 1608(a)(1).

28 U.S.C. § 1608(a)(2) is likewise inapplicable because it does not appear that the Republic of Liberia is party to any "international convention[s] on service of judicial documents." Service in this case does not fall within §§ 1608(a)(3) or (a)(4) because the Summons and Complaint were:

- served by hand rather than mail;

- served by "Binon Kumar, Assistant Manager (Geology)," instead of by the clerk of court; and

- not served upon either the Republic of Liberia's Minister of Foreign Affairs, *see* 28 U.S.C. § 1608(a)(3), or the Director of Special Consular Services in the U.S. State Department, *see id.* § 1608(a)(4).

*See Return of Service to the Government of Liberia* (dock. no. 5-1, 5-2, 5-3). Consequently, the plaintiffs have failed to serve the Republic in accordance with § 1608(a), and this case must be dismissed under Federal Rule of Civil Procedure 12(b)(5). Because the FSIA declares that the only way a court may acquire personal jurisdiction over a defendant is by properly serving them in accordance with § 1608(a), *see* 28 U.S.C. § 1330(b), this Court also lacks personal jurisdiction over the Republic and must dismiss this suit under Federal Rule of Procedure 12(b)(2).

## II.    THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER THIS CASE BECAUSE THE REPUBLIC OF LIBERIA IS IMMUNE FROM SUIT UNDER 28 U.S.C. § 1604.

Because the Republic of Liberia is a foreign sovereign, the FSIA is this Court's only source of subject matter jurisdiction for claims against it. *See Argentine Rep. v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989) ("[T]he text and structure of the FSIA demonstrate

Congress' intention that the FSIA be the sole basis for obtaining jurisdiction over a foreign state in our courts."). Consequently, the plaintiffs' claim that this matter falls within this Court's federal-question jurisdiction under 28 U.S.C. § 1331, *see Complaint* at ¶ 4, is spurious.

The Republic of Liberia, as a foreign state, is generally immune from the jurisdiction of the federal courts under 28 U.S.C. § 1604. To invoke this Court's jurisdiction, the plaintiffs must show that their claims fall within one of the exceptions to this immunity specified in 28 U.S.C. § 1605.[1] The plaintiffs maintain that this case falls within §§ 1605(a)(1) and (a)(6). *See Complaint* at ¶ 5. Because neither of these provisions is applicable, this case must be dismissed for lack of subject matter jurisdiction due to foreign sovereign immunity and the plaintiffs' request for preliminary injunction should be denied.

**A.    This Court May Not Exercise Jurisdiction Under 28 U.S.C. § 1605(a)(1) Because the Republic of Liberia Has Not <u>Waived its Immunity From This Court's Jurisdiction.</u>**

28 U.S.C. § 1605(a)(1) permits a federal court to exercise jurisdiction over a foreign sovereign that "has waived its immunity either explicitly or by implication." The Republic of Liberia has done neither.

**1.    Even assuming the Draft MDJVA is enforceable, it does not contain a binding or explicit waiver of <u>sovereign immunity to suits such as this.</u>**

To constitute an express waiver of sovereign immunity under § 1605(a)(1), a document "must give a clear, complete, unambiguous, and unmistakable manifestation of the sovereign's intent to waive its immunity" to suit in a United States court. *World Wide Minerals, Ltd. v. Rep. of Kaz.*, 296 F.3d 1154, 1162, 353 U.S. App. D.C. 147 (2002). "[L]anguage purporting to effect

---

[1]   The plaintiffs have not pointed to any "existing international agreements to which the United States [was] a party at the time of enactment" of the FSIA, October 21, 1976, that would allow a federal court to exercise jurisdiction over the Government of Liberia. 28 U.S.C. § 1604.

a waiver of sovereign immunity should be construed narrowly." *Atl. Tele-Network, Inc. v. Inter-American Dev. Bank*, 251 F. Supp. 2d 126, 133 (D.D.C. 2003). The Republic of Liberia never made such an express waiver.

Because the Draft MDJVA is not enforceable, *see supra* Part I, nothing within it can constitute an effective waiver of sovereign immunity. Nevertheless, even if it were binding, none of its provisions expressly waive the Republic of Liberia's sovereign immunity from lawsuits such as this. The only provision in the Draft MDJVA concerning sovereign immunity states:

> The GOVERNMENT hereby irrevocably, unreservedly and unconditionally waives all claims of sovereign immunity from the Arbitrators' jurisdiction, and from the enforcement of any arbitral award rendered by a tribunal constituted pursuant to this Agreement, including immunity from service of process and immunity from the jurisdiction of any court situated in any state, country or nation.

Draft MDJVA art. XXXI § 7. Again, this clause waives the Republic of Liberia's sovereign immunity from the jurisdiction of arbitrators, as well as "from the enforcement of any arbitral award." Thus, the Draft MDJVA does not contain a free-standing waiver of sovereign immunity applicable to all court proceedings for all purposes. Instead, the waiver concerning court proceedings is simply a subset of the general waiver of sovereign immunity for the enforcement of arbitral awards. This clause does not satisfy *World Wide*'s requirement that an express waiver be "complete, unambiguous, and unmistakable." 296 F.3d at 1162.

### 2.    The Republic of Liberia has not implicitly waived its sovereign immunity.

As this Court has recognized, FSIA's legislative history demonstrates that an implicit waiver of sovereign immunity may occur under three circumstances:

(1) where the state has agreed to arbitration in another country;

(2) where the foreign state agreed to a choice-of-law provision in a contract; and

(3) where a state files a responsive pleading in a case without raising the defense of immunity.

*Von Dardel v. U.S.S.R.*, 736 F. Supp. 1, 6 (D.D.C. 1990); *accord Calzadilla v. Banco Latino Int'l*, No. 04-10730, 2005 U.S. App. LEXIS 11802, at *7 (11th Cir. 2005). The second and third provisions are plainly inapplicable. The choice-of-law provision in the Draft MDJVA expressly stipulates that the agreement is governed by Liberian law. This does nothing to waive Liberia's immunity in an American court. *See Maritime Int'l Nominees Estab. v. Rep. of Guinea*, 693 F.2d 1094, 1102, 224 U.S. App. D.C. 119 (1982) (declining to find an implied waiver of sovereign immunity to suit in an American court where a choice-of-law clause in an arbitration agreement "stated that the law of Guinea would apply"). *Cf. Marlowe*, 604 F. Supp. at 709 ("[B]ecause [the defendant] agreed that the contract would be governed by District of Columbia law, it has implicitly waived its sovereign immunity within the meaning of 28 U.S.C. § 1605(a)(1).").

Similarly, because the Republic of Liberia is raising a sovereign immunity defense in this motion, the exception for deliberate omissions does not apply.

The only other method of implicit waiver is agreeing to arbitrate in a particular country. The plaintiffs contend that, because the Draft MDJVA specifies Washington, D.C. as a permissible place to arbitrate, the Republic of Liberia has waived its sovereign immunity to suit there. As discussed earlier, however, waivers of sovereign immunity must be construed narrowly. Consenting to arbitrate a dispute is not the same as consenting to litigate it. When a sovereign consents to arbitration, it implicitly waives its sovereign immunity only to suits necessary to enforce either the arbitral agreement or arbitral awards, not to suits that would cause the court to address the merits of the underlying dispute to be arbitrated. *See 1 Restatement (Third) of Foreign Relations Law of the United States* § 456(2)(b) (1987).

These proceedings cannot be construed as a suit to enforce the arbitral agreement because the plaintiffs have not alleged that the Republic has violated the terms of the MDJVA's arbitration clause in any way. Indeed, far from attempting to enforce the agreement, the plaintiffs are asking this court to violate it by issuing an order in contravention of the rules of the arbitral forum to which the plaintiffs claim the parties agreed. As explained below, *see infra* Part III, ICSID's rules strictly prohibit national courts from issuing injunctive relief unless the underlying arbitral agreement expressly provides for it.

Moreover, implied waiver does not extend to the plaintiffs' suit because it ultimately seeks injunctive that requires this Court to address the plaintiffs' likelihood of success on the merits. *See Complaint* at ¶ 41. As this Court has recognized, "an initial determination of the parties' rights by this Court would be destructive of their intention to have disputes resolved by neutral arbitrators." *Practical Concepts v. Rep. of Bol.*, 613 F. Supp. 863, 872 (D.D.C. 1985), *vac'd on other grounds*, 811 F.2d 1543, 258 U.S. App. D.C. 354 (1987). The *Practical Concepts* court further observed, "[S]ection 1605(a)(1) of the FSIA should not be construed to encourage federal courts to compete with or undermine freely agreed arbitration, but to ensure compliance with the agreement." *Id.* For these reasons, the Republic has not waived its right to sovereign immunity.

### B.    This Court May Not Exercise Jurisdiction Under 28 U.S.C. § 1605(a)(6).

The only other basis for circumventing sovereign immunity the plaintiffs assert is § 1605(a)(6). This provision strips a defendant of sovereign immunity in any case brought

> [1] to enforce an agreement made by the foreign state . . . to submit to arbitration all or any differences . . . which may arise . . . with respect to a defined legal relationship, whether contractual or not, [and]

[2] concerning a subject matter capable of settlement by arbitration under the laws of the United States.[2]

Though § 1605(a)(6) applies only if the arbitration will occur in the United States, that element is not contested for purposes of this motion.

The most basic reason this provision does not apply in this case is because the Republic of Liberia did not enter into an arbitration agreement with the plaintiffs. Because the Draft MDJVA never went into effect, there is no basis for invoking § 1605(a)(6).

Even assuming the Draft MDJVA's arbitration clause applies in this case, this dispute does not fall within § 1605(a)(6) because the plaintiffs are not asking this Court to "enforce an agreement . . . to arbitrate." *See Hirsh v. State of Israel*, 962 F. Supp. 377, 384-85 (S.D.N.Y. 1997) ("[S]ection 1605(a)(6) is facially inapplicable to the instant action, as Plaintiffs do not seek to enforce an agreement to arbitrate, nor to enforce an outstanding arbitral award."), *aff'd*, 1997 U.S. App. LEXIS 36435 (2d Cir. Dec. 31, 1997). This provision is interpreted quite narrowly. In *HSMV Corp. v. ADI, Ltd.*, 72 F. Supp. 2d 1122, 1127 n.7 (C.D. Cal. 1999), for example, the court held that a lawsuit to vacate an arbitral award did not constitute an action "to enforce an [arbitration] agreement."

While the plaintiffs' claims in the instant case are framed as being related to their pending effort to invoke arbitration, this is not a suit to enforce the arbitration agreement because it does not seek to compel the Republic of Liberia to participate in the arbitration. To the contrary, as discussed above, *see supra* Subsection II.A.2, the plaintiffs are calling upon this court to affirmatively violate the arbitration agreement by resolving a dispute that the arbitral forum's rules specify is within the exclusive jurisdiction of the arbitrators themselves. *See infra*

---

[2]   The full text of this provision also permits parties to enforce arbitral awards. *See, e.g.*, *Chromalloy Aeroservs. v. Arab Rep.*, 939 F. Supp. 907, 908 (D.D.C. 1996).

Part III. Thus, this suit must be dismissed for lack of subject matter jurisdiction under Federal

Rule of Civil Procedure 12(b)(1) due to the Republic's sovereign immunity, and the plaintiffs'

request for preliminary injunction should be rejected. Moreover, because a court must have

subject matter jurisdiction under the FSIA to exercise personal jurisdiction over a foreign

sovereign, *see* 28 U.S.C. § 1330(b), this case must be dismissed for lack of personal jurisdiction

under Federal Rule of Civil Procedure 12(b)(2), as well.

**III.    THIS CASE SHOULD BE DISMISSED BECAUSE THE RULES OF THE
        ARBITAL FORUM SPECIFY THAT THE ARBITRAL PANEL IS
        THE ONLY ENTITY THAT MAY PROVIDE INTERIM RELIEF.**

The arbitration clause in the Draft MDJVA the plaintiffs are seeking to enforce states:

> Any dispute between GOVERNMENT and CONCESSIONAIRE arising out of,
> in relation to, or in connection with this Agreement or its formation, validity,
> interpretation, performance, termination, enforceability, or breach of this
> Agreement . . . shall be exclusively and finally settled by binding arbitration
> pursuant to the Convention in accordance with the rules of the Centre . . . .

Draft MDJVA art. XXI, § 1. The Draft MDJVA clarifies that "the Convention" is the

Convention on the Settlement of Investment Disputes between States and Nationals of Other

States, *id.* art. I, § 1.10, while "the Centre" is the International Centre for Settlement of

Investment Disputes ("ICSID"), *id.* art. I., § 1.4. Thus, the Draft MDJVA states that arbitrations

must be conducted according to ICSID rules.

ISCID Arbitration Rule 39(5) provides:

> Nothing in this Rule shall prevent the parties, *provided that they have so
> stipulated in the agreement recording their consent*, from requesting any judicial
> or other authority to order provisional measures, prior to the institution of the
> proceeding, or during the proceeding, for the preservation of their respective
> rights and interests.

Ex. 1 (emphasis added).[3]  Under the plain text of this rule, a party may request provisional relief

from a domestic court "prior to the institution of the [ICSID] proceeding" *only* if it "so stipulated

[to do so] in the agreement recording [its] consent" to arbitration.

As ICSID stated when it adopted the Rule in 1984:

> The Convention prevents parties who have not expressly agreed
> otherwise from seeking provisional measures other than those that
> may be recommended by the Tribunal under Article 47 of the
> Convention and Arbitration Rule 39.  If the parties wish to retain
> the option of seeking provisional measures from domestic courts,
> they must do so by making express provision to that effect in the
> instrument recording their consent to arbitration.

Antonio Farra, *Revised Regulations and Rules*, 2 News from ICSID 6 (1985).[4]  This

interpretation was adopted by an ISCID tribunal in *Maffezini v. Spain*, Procedural Order No. 2

("Decision on Request for Provisional Measures"), Oct. 28, 1999, ICSID Case No. ARB/97/7, at

n.1 (Ex. 2).  The *Maffeznini* panel held that, because "the parties did not reserve the right to

access national judicial or other authorities for the imposition of provisional remedies as required

under Rule 39(5). . . . they have relinquished that right."  The leading treatise on ICSID also

confirms this interpretation.  *See* Christopher Schreuer, The ICSID Convention: A Commentary

384 (2001) (explaining that ISCID Arbitration Rule 39(5) "makes it clear that provisional

measures by domestic courts are permissible only if the parties have expressly agreed to them in

---

[3]    Exhibits discussed herein have been attached to this Statement for the convenience of the
Court.  This Court may take judicial notice of them under Federal Rule of Evidence 201(b)(2).

[4]    Indeed, ICSID suggests that parties who wish to retain the ability to apply to local courts for
provisional relief should include the following language in their arbitration clause:

> Without prejudice to the power of the Arbitral Tribunal to recommend provisional
> measures, either party hereto may request any judicial or other authority to order
> any provisional or conservatory measure, including attachment, prior to the
> institution of the arbitration proceeding, or during the proceeding, for the
> preservation of its rights and interests.

ICSID Model Clause 12.

the instrument recording their consent to arbitration"). Neither the Draft MDJVA's arbitration clause, nor any other provision in the Draft MDJVA, contains such a stipulation or reservation of rights.

As the D.C. Circuit has recognized,

[a] primary motivation for [ICSID] was the recognition that international methods of dispute settlement should be available in addition to national legal processes. . . . ICSID provides means for a Contracting State to have a dispute with an investor internationally adjudicated without having to bring action in a foreign court or to undertake intergovernmental litigation with the investor's State.

*Maritime Int'l Nominees Estab.*, 693 F.2d at 1103. An ICSID proceeding is quite different from most standard arbitrations, due in large part to the fact that it is based on disputes between an investor and a foreign sovereign. Because of the sovereign rights involved, the ICSID remedy should not be construed beyond its terms.

Global fails in its papers even to address these basic principles of ICSID arbitration. Instead, it relies exclusively on cases involving injunctions pending arbitration in domestic arbitrations or international commercial arbitrations in fora other than ICSID. These cases are irrelevant because the rules of the arbitral forums involved did not expressly prevent parties from seeking provisional relief from national courts unless their arbitration clause expressly authorized them to do so. See Pl. Br. at 9-13 (*citing Morgan Stanley D.W. Inc. v. Rothe*, 150 F. Supp. 2d 67, 69 (D.D.C. 2001) (National Association of Securities Dealers Code of Arbitration Procedure); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1050-51 (4th Cir. 1985) (New York Stock Exchange); *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.2d 1373, 1376-77 (6th Cir. 1995) (private agreement between the parties); *Ortho Pharm. Corp. v. Amgem, Inc.*, 882 F.2d 806, 809 (3rd Cir. 1989) (American Arbitration Association); *PMS Distrib. Co. v. Huber & Suhner, A.G.*, 863 F.2d 639, 641 (9th Cir. 1988)

(non-ICSID arbitration); *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 45 (1st Cir. 1986) (non-ICSID arbitration); *Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co.*, 749 F.2d 124, 125 (2d Cir. 1984) (non-ICSID arbitration); *Sauer-Getriebe KG v. White Hydraulics, Inc.*, 715 F.2d 348, 349 (7th Cir. 1983) (International Commerce Commission)).  Global's reliance on these cases is therefore misplaced.

Equally mistaken is Global's suggestion, without citing either Art. 26 of the Convention or Art. 39(5) of the ICSID Rules, that Congress somehow intended to allow courts to order provisional remedies in violation of those provisions by enacting legislation permitting federal courts to enforce <u>final</u> ICSID arbitral awards.  (Global Br. at 11)  The reason 22 U.S.C. § 1650a(a) provides that "the Federal Arbitration Act [the FAA] shall not apply to enforcement of awards rendered pursuant to the Convention" is not, as Global contends, because Congress intended to ignore the Convention and allow federal courts to grant provisional remedies. Instead, Congress enacted that statute because, unlike other arbitral awards that must be confirmed under the standards set forth in the FAA before they can be enforced,[5] ICSID awards are treated as if they were already judicial judgments.  Congress enacted 28 U.S.C. § 1650a(a) simply to ensure that "the pecuniary obligations imposed by such award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several states." 28 U.S.C. § 1650a(a).  There is nothing in that provision that can be construed as empowering federal courts to intervene in ICSID proceedings

---

[5]    *See* 9 U.S.C. §§ 1-13 (domestic awards), §§ 201-208 (international awards under New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards).

to grant provisional, "non-pecuniary" remedies pending an ICSID arbitration, in contravention of the parties' agreement and governing ICSID rules.[6]

In short, the arbitration clause the plaintiffs seek to enforce requires them to proceed under ICSID's rules. Draft MDJVA art. XXI, § 1. ICSID's rules prohibit parties from seeking interim relief in a national court unless their arbitration agreement expressly permits them to do so. ICSID Arbitration Rule 39(5). Because the purported agreement in this case lacks such a provision, this court may not entertain the plaintiffs' claims. Both the plaintiffs' motion for a preliminary injunction and their underlying suit must be dismissed.

## IV.   THE PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF.

Because this Court does not have jurisdiction, it lacks the power to enter the injunctive relief requested. But even if this Court did have jurisdiction—which it most certainly does not—the plaintiffs have failed to satisfy many of the requirements for injunctive relief. Specifically, they have not shown irreparable injury in the absence of interim relief, a likelihood of success on the merits, and that the public interest supports the issuance of an injunction. *Cf. Al-Fayed v. CIA*, 254 F.3d 300, 303, 349 U.S. App. D.C. 223 (2001). Their request for an injunction should be denied.

### 1.     The plaintiffs will not suffer irreparably injury.

The first problem with the plaintiffs' request for an injunction is that such relief is not necessary to prevent irreparable injury. The Complaint alleges that the Draft MDJVA "entitles

---

[6]     Indeed, in *Maritime Int'l Nominees Establishment v. Republic of Guinea*, 693 F.2d 1094 (D.C. Cir. 1982), the United States filed a Statement of Interest urging the Court of Appeals to find that, even under the pre-1984 version of the ICSID Rules, agreements to arbitrate with ICSID do not contemplate the involvement of domestic courts before a final ICSID decision is to be enforced. 693 F.2d at 1103.

[the plaintiffs] to rights in a unique asset, including finite mineral resources and access to government-controlled national infrastructure, including port and railway facilities." *Complaint* at ¶ 40. Nothing in the plaintiffs' allegations suggests that an ICSID panel could not determine a compensatory award, assuming it had jurisdiction and held for the plaintiffs. To the contrary, the plaintiffs' request for arbitration includes an explicit estimate of the amount of money that would be necessary to compensate them. (Ex. 3). The availability of monetary relief itself defeats a claim of irreparable injury. *See Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."). Accordingly, the plaintiffs do not stand to suffer irreparable injury in the absence of an injunction. *See, e.g., Clipper Cruise Line v. United States*, 855 F. Supp. 1, 4 (D.D.C. 1994) (holding that the "profits and goodwill" the plaintiff cruise line would lose "if it were foreclosed from entering Glacier Bay during the 1995 summer cruise season" did not constitute irreparable injury); *TGS Tech., Inc. v. United States Dep't of the Air Force*, No. 92-0062 (JHG), 1992 U.S. Dist. LEXIS 195, at *10 (D.D.C. Jan. 15, 1992) ("[P]laintiff cannot demonstrate irreparable injury simply by asserting, as it does here, a claim for loss of profits or the opportunity to fulfill the [government] contract.").

Moreover, the plaintiffs do not stand to suffer irreparable injury because they have obtained a temporary stay from the Liberian courts. Prior to filing this suit, Global initiated legal action in the Supreme Court of Liberia for essentially the same relief it seeks here: a writ of prohibition against the grant of a mining concession to Mittal Steel and a writ of mandamus to compel the Republic to execute and ratify the undated Draft MDJVA. (Ex. 4, 5). On July 19, 2005, a justice of the Supreme Court of Liberia referred these proceedings to the full bench of

the Supreme Court, and a ruling is expected shortly.  *Id.*  Because the Draft MDJVA would be governed by Liberian law under Article XXXIV thereof, the decision of the Supreme Court of Liberia as to whether there is any binding agreement between Global and the Republic will be dispositive of this issue.  In the meantime, the temporary stay orders issued by a single justice of the Supreme Court on April 14 and 15, 2005, which precludes the Republic from proceeding with the award of the concession to Mittal Steel, defeats any plausible claim of imminent irreparable harm to Global here.  (Ex. 6, 7).  Thus, there is no reason for this court to get involved, much less issue injunctive relief.

### 2.    The plaintiffs have no likelihood of success on the merits.

The second reason the plaintiffs should be denied a preliminary injunction is because they are unlikely to ultimately succeed on the merits of their claims.  Global contends that the Draft MDJVA constitutes a binding and enforceable contract and that the Republic's ultimate award of the mining concession at issue to Global's competitor is therefore a breach of the Draft MDJVA.  *Complaint* at ¶ 37.  As discussed earlier, *see supra* Part I, the plain language of Article II of the Draft MDJVA states that the agreement would not enter into effect until signed by both parties, ratified by the Liberian legislature, and approved by the Chairman of the Liberian Government.  Global admits that none of these events have transpired.

Further undermining Global's attempt to enforce the Draft MDJVA is Liberian statutory law containing various prerequisites that must occur before any Mineral Development Agreement with the Republic can be deemed "effective and binding."  In particular, Liberia's New Mineral and Mining Law provides that a Mineral Development Agreement shall not be effective and binding on the Republic of Liberia until it:

- is signed by the Minister of Lands, Mines, & Energy; the Minister of Finance; and the Chairman of the National Investment Commission.

- attested to by the Minister of Justice; and

- approved by the President of Liberia.

*See* New Mineral and Mining Law § 6.6(a).  Additionally, because a Mineral Development Agreement is in the nature of a concession as defined by the New General Business Law of Liberia, once the President approves it, he must then submit it to the legislature with his recommendation for ratification.  A Mineral Development Agreement becomes effective only upon ratification by the Legislature or on such effective date after ratification as may be fixed by the Legislature.  See New General Business Law, § 6.2(4).  Here, Global has submitted no evidence or otherwise alleged that any of these statutory prerequisites have occurred with respect to the Draft MDJVA.  Because none of the requirements of either the Draft MDJVA or Liberian law have been satisfied, the Draft MDJVA relied upon by Global is not an effective and legally binding contract of which the Republic could be found to be in breach.

Global's position that the Draft MDJVA is a final and enforceable agreement is further controverted by the incomplete nature of that document.  The Draft MDJVA is undated, lacks any signature page, is missing Appendices A and B, and does not include descriptions for certain defined terms.  These facts undercut any argument that the parties had entered into a final contract.  Similarly, Global's acknowledgement of and voluntary participation in a subsequent bid tender process renders spurious its current quest to enforce the draft agreement predating that rebid process.

Global attempts to obfuscate these straightforward facts with the declaration of its Liberian lawyer, George E. Henries.  Conspicuously absent from Mr. Henries' declaration,

however, is any discussion or analysis of the explicit language of the draft contract or the Liberian statutory law requirements discussed above that are necessary to effectuate any such mineral rights contract. Mr. Henries' reliance on apparent authority and estoppel under Liberian common law cannot overcome the plain language of the proposed agreement, which on its face requires execution, ratification, and approval for the contract to be effective. Nor can these common law concepts supplant the explicit statutory requirements for the effectuation of a public contract by the Republic under Liberian law.

Given the woeful deficiencies in its claim for breach of contract, Global cannot satisfy the requisite "reasonable likelihood of success on the merits" prong of the preliminary injunction standard.

### 3.       An injunction is not in the public interest.

The final reason this Court should deny an injunction is because its issuance is not in the public interest. The Supreme Court has recognized that this country has a strong public interest in abstaining from interfering with the sovereign affairs of foreign nations. *See, e.g., First Nat'l City Bank v. Banco Nacional de Cuba*, 406 U.S. 759, 765 (1972) (noting the need to promote "comity between independent sovereigns"). As the Ninth Circuit has recognized, "[A]ny injunctive relief instructing a foreign sovereign to alter its chosen means of allocating and profiting from its own valuable natural resources would affront the sovereignty of a state." *Liu v. Rep. of China*, 892 F.2d 1419, 1432 (9th Cir. 1989) (quotation marks omitted). Consequently, the requested relief would not be in the public interest.

## CONCLUSION

For the reasons stated above, the Republic of Liberia respectfully requests that this Court dismiss the Complaint and deny the plaintiffs' motion for a preliminary injunction.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

Judith A. Miller (Bar No. 941542)

725 12th St. NW
Washington, D.C.  20006
(202)-434-5247
Fax: (202)-434-5029
*Counsel for Defendant Republic of Liberia*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of July, 2005, I caused a true and correct copy of the

foregoing Defendant's Motion to Dismiss the Complaint; Statement of Points and Authorities in

Support of the Motion to Dismiss and in Opposition to the Plaintiffs' Motion for a Preliminary

Injunction; and Proposed Order, to be served by first-class mail, postage prepaid upon:

> Bradford A. Berenson
> Sidley Austin Brown & Wood LLP
> 1501 K St., N.W.
> Washington, D.C.  20005

Judith A. Miller