# EXHIBIT 1

# ICSID CONVENTION, REGULATIONS AND RULES

**International Centre for
Settlement of Investment Disputes**
1818 H Street, N.W.
Washington, D.C. 20433, U.S.A.

of the inquiry, the time limit, the procedure to be followed and other particulars. The parties may participate in any visit or inquiry.

## Rule 38
## Closure of the Proceeding

(1) When the presentation of the case by the parties is completed, the proceeding shall be declared closed.

(2) Exceptionally, the Tribunal may, before the award has been rendered, reopen the proceeding on the ground that new evidence is forthcoming of such a nature as to constitute a decisive factor, or that there is a vital need for clarification on certain specific points.

# Chapter V
# Particular Procedures

## Rule 39
## Provisional Measures

(1) At any time during the proceeding a party may request that provisional measures for the preservation of its rights be recommended by the Tribunal. The request shall specify the rights to be preserved, the measures the recommendation of which is requested, and the circumstances that require such measures.

(2) The Tribunal shall give priority to the consideration of a request made pursuant to paragraph (1).

(3) The Tribunal may also recommend provisional measures on its own initiative or recommend measures other than those specified in a request. It may at any time modify or revoke its recommendations.

(4) The Tribunal shall only recommend provisional measures, or modify or revoke its recommendations, after giving each party an opportunity of presenting its observations.

(5) Nothing in this Rule shall prevent the parties, provided that they have so stipulated in the agreement recording their consent, from requesting any judicial or other authority to order provisional measures, prior to the institution of the proceeding, or during the proceeding, for the preservation of their respective rights and interests.

## Rule 40
## Ancillary Claims

(1) Except as the parties otherwise agree, a party may present an incidental or additional claim or counter-claim arising directly out of

**Arbitration Rules**

# EXHIBIT 2

*(English Translation from Spanish Original)*

### INTERNATIONAL CENTRE FOR SETTLEMENT OF INVESTMENT DISPUTES
#### Washington, D.C.


Emilio Agustín Maffezini
Claimant

v.

Kingdom of Spain
Respondent


ICSID Case No. ARB/97/7


## PROCEDURAL ORDER N° 2

1.    The Kingdom of Spain, the Respondent in this arbitration proceeding, by document dated 3 July 1998, has filed an application for provisional measures. The Claimant by document dated 6 August 1999, requests the Tribunal to dismiss such application.

2.    Specifically, the Respondent has requested the Tribunal to require the Claimant to post a guaranty, bond or similar instrument in the amount of the costs expected to be incurred by the Respondent in defending against this action.

3.    The Respondent alleges that the claim is worthless and the Claimant's accusations groundless. Accordingly, the Respondent argues, the Claimant will lose this action and should, therefore, be required to reimburse the Respondent for all its costs and expenses incurred in defending against this claim.

4.      Provisional measures have been ordered by previous ICSID tribunals [See for example, *Holiday Inns et al.* v. *Morocco* (ICSID Case No. ARB/72/1), and *MINE* v. *Guinea* (ICSID Case No. ARB/84/4).] However, the Tribunal has not found any ICSID case where provisional measures were ordered requiring the posting of a guaranty or bond to cover the costs and expenses to be incurred in the future by one of the parties.

5.      Of course, the lack of precedent is not necessarily determinative of our competence to order provisional measures in a case where such measures fall within the purview of the Arbitration Rules and are required under the circumstances.

6.      The issue of provisional measures is covered by both the *Convention on the Settlement of Investment Disputes Between States and Nationals of Other States* and the *Rules of Procedure for Arbitration Proceedings* [Arbitration Rules.]

7.      Article 47 of the Convention states;

> Except as the parties otherwise agree, the Tribunal may, if it considers the circumstances so require, recommend any provisional measures which should be taken to preserve the respective interests of either party.

While Rule 39(1) states that

> At any time during the proceedings a party may request that provisional measures for the preservation of its rights be recommended by the Tribunal. The request shall specify the rights to be preserved, the measures the recommendation of which is requested, and the circumstances that require such measures.

8.      Thus, it is clear that an arbitral tribunal has the authority to recommend provisional measures.[1]

---

[1] The Tribunal notes that the parties did not reserve the right to access national judicial or other authorities for the imposition of provisional remedies as required under Rule 39(5). Accordingly, they have relinquished this right.

9.     While there is a semantic difference between the word 'recommend' as used in Rule 39 and the word 'order' as used elsewhere in the Rules to describe the Tribunal's ability to require a party to take a certain action, the difference is more apparent than real. It should be noted that the Spanish text of that Rule uses also the word "dictación". The Tribunal does not believe that the parties to the Convention meant to create a substantial difference in the effect of these two words. The Tribunal's authority to rule on provisional measures is no less binding than that of a final award. Accordingly, for the purposes of this Order, the Tribunal deems the word 'recommend' to be of equivalent value as the word 'order.'

10.     The imposition of provisional measures is an extraordinary measure which should not be granted lightly by the Arbitral Tribunal. There is no doubt that the applicant, in this case the Respondent, has the burden to demonstrate why the Tribunal should grant its application.

11.     We now turn to the Arbitration Rules and the language of the Convention to determine whether the provisional measures sought by the Respondent are capable of being ordered by the Tribunal.

12.     Rule 39(1) specifies that a party may request

     '. . . provisional measures for the preservation of its rights. . . .'

13.     The use of the present tense implies that such rights must exist at the time of the request, must not be hypothetical, nor are ones to be created in the future.

14.     An example of an existing right would be an interest in a piece of property, the ownership of which is in dispute. A provisional measure could be ordered to require that the property not be sold or alienated before the final award of the arbitral tribunal. Such an order would preserve the *status quo* of the property, thus preserving the rights of the party in the property.

15.     However, in the instant case, we are unable to see what present rights are intended to be preserved. The Respondent alleges that it may be difficult or impossible for it to obtain reimbursement of its legal costs and expenses, *if the Claimant does not prevail and if the Tribunal orders the payment of additional costs and expenses to be paid by the Claimant.*

16.    This claim contains several hypothetical situations.

17.    One, whether the Respondent will prevail and two, whether the Tribunal will deem the Claimant's case to be of such nature as to require it to pay the Respondent the costs and expenses it will incur.

18.    Obviously, at this point in the proceedings the Tribunal is unable to answer either of these two questions. These must remain, at least for the time being, as hypothetical issues concerning future events. While hypothetical issues are stimulating and academically challenging, they are beyond the ken of an arbitral tribunal determining real issues of fact and law.

19.    Respondent alleges that the Claimant's claim is totally without merit, forcing the Respondent to spend unnecessary money on the costs and expenses incurred in defending against the Claimant's claim.

20.    Expectations of success or failure in an arbitration or judicial case are conjectures. Until this Arbitral Tribunal hands down an award, no one can state with any certainty what its outcome will be. The meritoriousness of the Claimant's case will be decided by the Tribunal based on the law and the evidence presented to it.

21.    A determination at this time which may cast a shadow on either party's ability to present its case is not acceptable. It would be improper for the Tribunal to pre-judge the Claimant's case by recommending provisional measures of this nature.

22.    We now turn to the final question before the Tribunal on this issue of provisional measures.

23.    Any preliminary measure to be ordered by an ICSID arbitral tribunal must relate to the subject matter of the case before the tribunal and not to separate, unrelated issues or extraneous matters.

24.    In this case, the subject matter in dispute relates to an investment in Spain by an Argentine investor while the request for provisional measures relates to a guarantee or bond to ensure payment of additional costs and expenses should the Claimant not prevail in the case.

CASES                                                                  5

25.    It is clear that these are two separate issues. The issue of provisional measures is unrelated to the facts of the dispute before the Tribunal.

26.    In this case, after review of the Respondent's and Claimant's briefs, the oral arguments, as well as our review of the applicable law, we find that the Respondent has failed to demonstrate that the imposition of an order for provisional measures is warranted.

27.    Accordingly, the Arbitral Tribunal hereby <u>ORDERS</u> the Respondent's application for provisional measures <u>DISMISSED</u>.

_____
Francisco Orrego Vicuña
President of the Tribunal

Date: October 28, 1999.

# EXHIBIT 3

IN THE HONOURABLE SUPREME COURT OF THE REPUBLIC OF LIBERIA
SITTING IN ITS MARCH TERM, A. D. 2005

CHAMBERS        CAMPBELL       JUSTICE

Liberia Global Mining Company represented by and thru its   )
Incorporator, the Honourable Kabineh Ja'neh, Minister of    )
Justice and Attorney General of the Republic of Liberia,    )
Provider Limited, represented by its Director, Jacob C. Varnam, )
Global Infrastructure Holdings Limited represented    )
by and thru its authorized representative, Rakesh     )
Dikshit of the City of Monrovia, Liberia..PETITIONERS   )
                   )
      Versus       ) Petition for a Writ of
                ) Prohibition
Liberian Mining Corporation represented by and thru    )
its Chairman of the Board of Directors, the Honourable   )
Lucinee F. Kamara, Sr., the Minerals Technical     )
Committee of the Republic of Liberia represented by and   )
thru its Chairman, the Honourable, Jonathan Mason,    )
Government of the Republic of Liberia by and thru its    )
Minister of Justice, the Honourable Kabineh Ja'neh, the   )
Honourable Jonathan Mason, Minister of Lands, Mines,   )
And Energy, the Concession Review Committee, by and   )
thru its Chairman, and the National Investment Commission  )
of the Republic of Liberia represented by and thru its   )
Chairman, the Honourable Roosevelt K. Quiah (Amb.), and the )
Contracts And Monopolies Commission represented by and thru )
its Chairperson, Marie Parker, all of the City of     )
Monrovia, Liberia,.........................................RESPONDENTS )

PETITION

Petitioners in the above entitled cause of action respectfully petitions Your Honour and

this Honourable Court and showeth therefore the following factual and legal reasons, to wit:

1. That Co-Petitioner Liberia Global Mining Company in which Co-Petitioner Global Infrastructure Holdings Limited is owner of seventy (70) Class B shares, is a domestic Liberian Corporation, organized and existing under the laws of the Republic of Liberia, whilst the Republic of Liberia is owner of thirty (30) Class A shares in the said Liberia Global Mining Company. Attached hereto as Exhibit "A" is a copy of the Articles of Incorporation of the said Liberia Mining Company to form a part of this Petition.

2. That the said Co-Petitioner Liberia Mining Company was organized as a joint venture company for the purpose of undertaking mining operations at the former LAMCO Concession Area pursuant to a Memorandum of Understanding executed amongst the Government of Liberia (GOL), Liberian Mining Corporation (LIMINCO), Global Infrastructure Holdings Limited (GIHL) and Provider Limited (Provider) on 28 November 2003. A copy of the Memorandum of Understanding is hereto attached as Exhibit "B" to form a part of this Petition.

3. That Co-Petitioner Global Infrastructure Holdings Limited is one of five competitors including LNM Holdings NV who expressed interest in the exploitation and development of iron ore in the former LAMCO Concession Area together with its industrial infrastructure which LIMINCO oversees. That following review/screening process by the Minerals Technical Committee of the Republic of Liberia (the Technical Committee), the Technical Committee selected Co-Petitioner Global Infrastructure Holdings Limited as the company with whom GOL should develop and exploit iron ore in the former LAMCO Concession Area. The Technical Committee subsequently made appropriate recommendation in this regard and on 27 August 2004 the Board of Directors of LIMINCO authorized and

empowered the Technical Committee to commence negotiations for a Mineral Development Agreement with Co-Petitioner Global Infrastructure Holdings Limited. The said negotiations were undertaken..

4.    That Co-Petitioner Global Infrastructure Holdings Limited was advised on 8 October 2004, by letter NTGL/MKW/3.104/ MLM&E/04 that the negotiations had been successfully concluded and that the completed final draft of the Mineral Development Agreement had been agreed by the Technical Committee and forwarded to the LIMINCO Board for approval and subsequent follow-up. In this connection, the said 8 October 2004 letter over the signature of the Chairman of the Technical Committee further confirmed the Technical Committee's commitment to work with Petitioner in respect of the LIMINCO Project. A copy of letter NTGL/MKW/3.104/MLM&E/04 is hereto attached as Exhibit "C" to form a cogent part of this Petition.

5.    That subsequently, on 15 December 2004, the Honourable Roosevelt K. Quiah (Amb.), Chairman of the National Investment Commission of the Republic of Liberia, on behalf of GOL and its agencies and instrumentalities, reaffirmed, approved and consented to the execution of the Mineral Development Agreement as negotiated with the Technical Committee of Liberia; *"that this approval and authorization also constitutes permission to GIHL or its nominee as Operator to proceeded with the performance of the works and obligations envisaged in the draft agreement pending formal signing of the Mineral Development Agreement"*. (Emphasis added) A copy of Honourable Quiah's letter is hereto attached as Exhibit "D" to form a part of this Petition.

6.    That based upon the Honourable Quiah's letter, Co-Petitioner Global Infrastructure Holdings Limited did finance the payroll of some two hundred fifty (250) employees who include a number of former combatants to undertake both the preservation of the assets in the former LAMCO Concession Area and brushing along the railroad.

7.    That Petitioners hereby say that all of its dealings with GOL which have resulted into the negotiation and conclusion of the terms and conditions of the Mineral Development Agreement (now awaiting signature) between GOL and Liberia Global Mining Company of which Petitioner is a majority shareholder have been in accordance with the Minerals And Mining Law of the Republic of Liberia.

8.    That Petitioners hereby say that notwithstanding the facts that contained in counts 1 through 7 of this Petition, the Ministry of Lands, Mines And Energy allegedly predicated upon directives of Chairman Charles G. Bryant, the LIMINCO Board and/or the Technical Committee has been instructed to negotiate and conclude a Mineral Development Agreement with LNM HOLDINGS NV/Mittal Steel Company NV to the detriment of Co-Petitioners Liberia Global Mining Company and Global Infrastructure Holdings Limited after Co-Petitioner Global Infrastructure Holdings Limited's proposals and the pending signature Mineral Development Agreement in which Petitioners has an interest was made available to LNM HOLDING NV/Mittal Steel Company NV who thereupon made substantial adjustments to its original proposal to the detriment of Petitioners. Petitioners say that the making available to its competitor by the Technical Committee, the LIMINCO Board and/or the Ministry of Lands, Mines And Energy is a bad business practice, and savours of absolute bad faith and should be punished by the law.

9.    That Petitioners hereby say that the directive of Chairman Bryant whereby he directs a course of action to award Petitioners' competitor a Mineral Development Agreement instead of Petitioners is contrary to the Minerals And Mining Law.

10.    That Petitioners hereby say further that Chairman Bryant's further directive that Petitioners' competitor whose original proposal had been rejected by the Technical Committee to be awarded a Mineral Development Agreement for the former LAMCO Concession Area (no matter what) which is covered by the Memorandum of Understanding earlier mentioned herein, and the final draft Mineral Development Agreement pending signature since October 2004, is not only contrary to his Oath of Office, having sworn to uphold the Constitution and laws of the Republic of Liberia, but also contravenes the right to equal protection clause of the Liberian Constitution, the same being Article 11(c) thereof.

WHEREFORE, and in view of the foregoing, Petitioner prays Your Honour and this Honourable Court for the issuance of an alternative Writ of Prohibition against the Respondents restraining and prohibiting them from concluding a Mineral Development Agreement with Mittal Steel for the former LAMCO Concession Area; order that the Mineral Development Agreement in which Petitioner has an interest be forthwith executed; and to rule the costs of these proceedings against Respondents.

Respectfully submitted,
The above named Petitioner,
By and through its Counsel:

LEGAL ASSOCIATES, LLPC

152 Carey Street
Monrovia, Liberia

Dated this 12th day of April, 2005.

J. Emmanuel Wureh
COUNSELLOR-AT-LAW

# EXHIBIT 4

IN THE HONOURABLE SUPREME COURT OF THE REPUBLIC OF LIBERIA
SITTING IN ITS MARCH TERM. A. D. 2005

CHAMBERS                    CAMPBELL                    JUSTICE

| | |
|---|---|
| Global Infrastructure Holdings Limited represented | ) |
| by and thru its authorized representative, Rakesh | ) |
| Dikshit of the City of Monrovia, Liberia..PETITIONER | ) |
| | ) |
| Versus | ) Petition for a Writ of |
| | ) Mandamus_____ |
| Liberian Mining Corporation represented by and thru | ) |
| its Chairman of the Board of Directors, the Honourable | ) |
| Lucinee F. Kamara, Sr., Mr. Ciapha Gbollie, LIMINCO's | ) |
| President, the Minerals Technical Committee of the Republic of | ) |
| Liberia represented by and  thru its Chairman, the Honourable | ) |
| Jonathan Mason, Government of the Republic of Liberia | ) |
| by and thru its Minister of Justice, the Honourable Kabineh | ) |
| Ja'neh, the Honourable Jonathan Mason, Minister of Lands, | ) |
| Mines, And Energy, the Concession Review Committee, by and | ) |
| thru its Chairman, and the National Investment Commission | ) |
| of the Republic of Liberia represented by and thru its | ) |
| Chairman, the Honourable Roosevelt K. Quiah (Amb.), and the | ) |
| Contracts And Monopolies Commission represented by and thru | ) |
| and thru its Chairperson, Marie Parker, all of the City of | ) |
| Monrovia, Liberia,..........................................RESPONDENTS | ) |

PETITION

Petitioner in the above entitled cause of action respectfully petitions Your Honour and this Honourable Court and showeth therefore the following factual and legal reasons, to wit:

1.  That Petitioner is owner of seventy (70) Class B shares in Liberia Global Mining Company, a domestic Liberian Corporation, organized and existing under the laws of the Republic of Liberia, whilst the Republic of Liberia is owner of thirty (30) Class A shares in the said Liberia Global Mining Company.  Attached hereto as Exhibit "A" is a copy of the Articles of Incorporation of the said Liberia Mining Company to form a part of this Petition.

2.  That the said Liberia Global Mining Company was organized as a joint venture company for the purpose of undertaking mining operations at the former LAMCO Concession Area pursuant to a Memorandum of Understanding executed amongst the Government of Liberia (GOL), Liberian Mining Corporation (LIMINCO), Global Infrastructure Holdings Limited (GIHL) and Provider Limited (Provider) on 28 November 2003.  A copy of the Memorandum of Understanding is hereto attached as Exhibit "B" to form a part of this Petition.

3.  That Petitioner was one of five competitors including LNM Holdings NV/Mittal Steel Company NV who expressed interest in the exploitation and development of iron ore in the former LAMCO Concession Area together with its industrial infrastructure which LIMINCO oversees.  That following a review/screening process by the Minerals Technical Committee of the Republic of Liberia (the Technical Committee), the Technical Committee selected Petitioner as the company with whom GOL should develop and exploit iron ore in the former LAMCO Concession Area.  The Technical Committee subsequently made appropriate recommendation(s) in this regard and on 27 August 2004 the Board of Directors of LIMINCO authorized and empowered the Technical Committee to commence negotiations for a Mineral Development Agreement with Petitioner.  The said negotiations were undertaken.

4.  That Petitioner was advised on 8 October 2004, by letter NTGL/MKW/3.104/ MLM&E/04 that the negotiations had been successfully concluded and that the completed final draft of

the Mineral Development Agreement had been agreed by the Technical Committee and forwarded to the LIMINCO Board for approval and subsequent follow-up. In this connection, the said 8 October 2004 letter over the signature of the Chairman of the Technical Committee further confirmed the Technical Committee's commitment to work with Petitioner in respect of the LIMINCO Project. A copy of letter NTGL/MKW/3.104/MLM&E/04 is hereto attached as Exhibit "C" to form a cogent part of this Petition.

5.    That subsequently, on 15 December 2004, the Honourable Roosevelt K. Quiah (Amb.), Chairman of the National Investment Commission of the Republic of Liberia, on behalf of GOL and its agencies and instrumentalities, reaffirmed, approved and consented to the execution of the Mineral Development Agreement as negotiated with the Technical Committee of Liberia; *"that this approval and authorization also constitutes permission to GIHL or its nominee as Operator to proceed with the performance of the works and obligations envisaged in the draft agreement pending formal signing of the Mineral Development Agreement".* (Emphasis added) A copy of Honourable Quiah's letter is hereto attached as Exhibit "D" to form a part of this Petition.

6.    That, based upon the Honourable Quiah's letter, Petitioner did finance the payroll of some two hundred fifty (250) employees who include a number of former combatants to undertake both the preservation of the assets in the former LAMCO Concession Area and brushing along the railroad.

7.    That Petitioner hereby says that all of its dealings with GOL which have resulted into the successful negotiation and conclusion of the terms and conditions of the Mineral Development Agreement (now awaiting signature) between GOL and Liberia Global Mining Company of which Petitioner is a majority shareholder have been in accordance with the Minerals And Mining Law of the Republic of Liberia.

8.    That Petitioner hereby says further that notwithstanding the facts that are contained in counts 1 through 7 of this Petition, the Ministry of Lands, Mines And Energy allegedly predicated upon directives of Chairman Charles G. Bryant, the LIMINCO Board and/or the Technical Committee, has been instructed to negotiate and conclude a Mineral Development Agreement with LNM Holdings NV/Mittal Steel Company NV to the detriment of Petitioner after Petitioner's proposals and the pending signature Mineral Development Agreement in which Petitioner has an interest were made available to LNM Holding NV/Mittal Steel Company NV who thereupon made substantial adjustments to its original proposal to the detriment of Petitioner. Petitioner says that the making available its proposal and the final draft Mineral Development Agreement to its competitor by the Technical Committee, the LIMINCO Board and/or the Ministry of Lands, Mines And Energy is a bad business practice, and savours of absolute bad faith and should therefore be punished by the law.

9.    That Petitioner hereby says further that the alleged directive of Chairman Bryant whereby he directs a course of action to award Petitioner's competitor a Mineral Development Agreement instead of Petitioner is contrary to the Minerals And Mining Law.

10.   That Petitioner hereby says further that Chairman Bryant's further directive that Petitioner's competitor who had been rejected by the Technical Committee to be awarded a Mineral Development Agreement for the former LAMCO Concession Area (no matter what) which was covered by the Memorandum of Understanding earlier mentioned, and the final draft Mineral Development Agreement pending signature since October 2004, is not only contrary of his Oath of Office, having sworn to uphold the Constitution and laws of the Republic of Liberia but also contravenes the right to equal protection of law clause of the Constitution, the same being Article 11 (c) thereof.

11.   That Petitioner hereby further says it is Respondents' bounding official duty to sign the final draft Mineral Development Agreement by and between the Republic of Liberia and Liberia Global Mining Company which said Agreement has been awaiting signature since October, 2004.

WHEREFORE, and in view of the foregoing, Petitioner hereby respectfully prays Your Honour and this Honourable Court to grant this Petition by: (1) commanding, compelling, mandating and/or ordering Respondents to sign the Mineral Development Agreement by and between the Republic of Liberia and Liberia Global Mining Company which had been recommended for signature since October 2004 by the LIMINCO Board; (2) the issuance of a Writ of Mandamus directed against the Respondents to show cause why they have refused to sign the subject Mineral Development Agreement; (3) ordering Respondents to desist from, stop and/or discontinue any and all negotiations with any other third party including but not limited to LNM Holdings NV/Mittal Steel Company NV, with the view to entering into a Mineral Development Agreement covering the former LAMCO Concession Area with any such third party; (4) issuing a Stay Order against Respondents and any third party pending the final resolution of this matter; (5) granting Petitioner any and all further relief which under the law is just and equitable; and (6) ruling the costs of these proceedings against Respondents.

Respectfully submitted,
The above named Petitioner,
By and through its Counsel:

LEGAL ASSOCIATES, LLPC

152 Carey Street
Monrovia, Liberia

Dated this 12th day of April,
2005.

J. Emmanuel Wureh
COUNSELLOR-AT-LAW

# EXHIBIT 5

OFFICE OF THE CLERK
SUPREME COURT OF LIBERIA
TEMPLE OF JUSTICE
MONROVIA, LIBERIA

April 14, 2005

Ms. Marie Parker
Chairperson
Contracts and Monopolies Commission
Monrovia, Liberia

Dear Ms. Parker:

By directive of His Honour Ishmael P. Campbell, Asso-
ciate Justice presiding in Chambers, you are hereby cited
to a conference with His Honour on Tuesday, April 26,
2005, at the hour of 2:00 p.m., in connection with the
case:

| | |
|---|---|
| Liberia Global Mining Company represent-<br>ed by and thru its Incorporator, the<br>Honourable Kabineh Ja'neh, Minister of<br>Justice and Attorney General of the<br>Republic of Liberia, provider Limited,<br>represented by its Director, Jacob C.<br>Varnam, Global Infrastructure Holdings<br>Limited represented by and thru its<br>authorized representative, Rakesh<br>Dikshit of the City of Monrovia,<br>Liberia,.................PETITIONES | )PETITION FOR<br>) A WRIT OF<br>)PROHIBITION<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Versus | ) |
| Liberian Mining Corporation represented<br>by and thru its Chairman of the Board of<br>Directors, theHonourable Lucinee F.<br>Kamara, Sr., the Minerals Technical Com-<br>mittee of the Republic of Liberia repre-<br>sented by and thru its Chairman, the<br>Honourable Jonathan Mason, Government of<br>the Republic of Liberia, by and thru its<br>Minister of Justice, the Honourable Kabineh<br>Ja'neh, the Honourable Jonathan Mason,<br>Minister of Lands, Mines and Energy, the<br>Concession Review Committee, by and thru<br>its Chairman, and the National Investment<br>Commission of the Republic of Liberia<br>represented by and thru its Chairman, the<br>Honourable Roosevelt K. Quiah (Amb.), and<br>the Contracts and Monopolies Commission<br>represented by and thru its Chairperson,<br>Marie Parker, all of the City of Monrovia,<br>Liberia,.................RESPONDENTS | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Meanwhile, you are hereby ordered to stay all further
proceedings in this matter pending the outcome of the con-
ference.

Kind regards.

Very truly yours,

Martha G. Bryant
CLERK, SUPREME COURT OF LIBERIA

S E A L:

MGB/sjp

# EXHIBIT 6

OFFICE OF THE CLERK
SUPREME COURT OF LIBERIA
TEMPLE OF JUSTICE
MONROVIA, LIBERIA

April 15, 2005

Ms. Marie Parker
Chairperson/Contracts and Monopolies
Commission
Monrovia, Liberia

Dear Ms. Parker:

By directive of His Honour Ishmael P. Campbell, Associate Justice presiding in Chambers, you are hereby cited to a conference with His Honour on Thursday, April 28, 2005, at the hour of 2:00 p.m., in connection with the case:

Global Infrastructure Holdings Limited represented by and thru its authorized representative, Rakesh Dikshit of the City of Monrovia, Liberia,...............PETITIONER

)
)
)
)
)

PETITION FOR
A WRIT OF
MANDAMUS

Versus

Liberian Mining Corporation represented by and thru its Chairman of the Board of Directors, the Honourable Lucinee F. Kamara, Sr., Mr. Ciapha Gbollie, LIMINCO's President, the Minerals Technical Committee of the Republic of Liberia represented by and thru its Chairman, the Honourable Jonathan Mason, Government of the Republic of Liberia by and thru its Minister of Justice, the Honourable Kabineh Ja'neh, the Honourable Jonathan Mason, Minister of Lands, Mines and Energy, the Concession Review Committee, by and thru its Chairman, and the National Investment Commission of the Republic of Liberia represented by and thru its Chairman, the Honourable Roosevelt K. Quiah (Amb.), and the Contracts and Monopolies Commission represented by and thru its Chairperson, Marie Parker, all of the City of Monrovia, Liberia,........RESPONDENTS

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Meanwhile, you are hereby ordered to stay any and all negotiations with any other third party including but not limited to LNM Holdings NV/Mittal Steel Company NV pending the outcome of the conference.

Kind regards.

Very truly yours,

*Martha G. Bryant*
Martha G. Bryant
CLERK, SUPREME COURT OF LIBERIA

S E A L:

MGB/sjp